Wolk *v.* Stefanowicz, Appellant.

Argued January 10, 1935.  Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Jacob Weinstein,* of *Brenner & Brenner,* for appellant.

*William N. Nitzberg* and *Maurice H. Brown,* for appellee, were not heard.

PER CURIAM, March 25, 1935:

Appellee's bill was for an accounting by appellant as trustee under a trust agreement, and payment of such sum as should be found to be due.  From the bill, answers and proof, the chancellor found the facts as follows:  On September 14, 1925, Joseph Bellak and Mary Wolk Bellak (stepfather and mother, respectively, of appellee, who

was born July 11, 1911) executed a judgment note in the sum of $9,000, payable to appellant, the uncle of appellee. At the same time appellant executed a trust agreement setting forth that the sum of $9,000 mentioned in the Bellak note was payable to him as trustee for appellee, Ksavery Wolk, to secure for the latter "the full share of the estate brought into the marriage of Joseph Bellak with Mary Wolk Bellak by his mother." The obligation was not to become collectible until the death of Mary Wolk Bellak and was to become void in the event of the death of Joseph Bellak before his wife. Judgment was entered on the note in question in the Court of Common Pleas No. 4, of Philadelphia County, at No. 4638, September Term, 1925. The trust agreement was not recorded, however, nor was a guardian at any time appointed for appellee, who reached his majority July 11, 1932.

Mary Bellak died January 14, 1931, and shortly thereafter appellant made demand on Joseph Bellak for payment of the trust fund evidenced by the note, which demand was refused. At that time Bellak was the owner of real estate on East Westmoreland Street, Philadelphia, and carried on in the premises a hardware store and other business. The real estate was unencumbered, except for the judgment entered on the trust note above referred to. Instead of issuing execution on his judgment, appellant purchased in his own name from Bellak, for the consideration of $10,200, the latter's real estate, mentioned above, together with the stock, good will and fixtures of his business, seven months later selling both to his (appellant's) brother-in-law for a named consideration of $6,300. The deed, purchase-money mortgage and bill of sale covering these transactions were executed in appellant's name without mention of his trust. Appellant made no accounting to his nephew until after the filing of the present bill on January 29, 1934. The court below subsequently ordered appellant to pay to appellee the sum of $9,000 in cash, together with interest thereon.

To the chancellor's findings and decree nisi in favor of appellee, exceptions were filed which were later dismissed. The following excerpts from the adjudication cover the question involved here and are accepted and approved by us in sustaining the final decree.

"Not only is the account incorrectly stated but it reveals the defendant's disregard of his duties under the trust agreement. That provided for the collection of the note. It did not authorize him to invest the proceeds or to conduct a business, and to pay the income to the plaintiff. His duties terminated when he had realized on the note, but instead of transferring the proceeds to the plaintiff or to a guardian appointed for him, as the plaintiff was then a minor, he retained them and dealt with them as if they were his own. Having taken title in his own name as an individual he proceeded to conduct the business, which, in his capacity as trustee, he had no right to do, and then he sold both the premises and the business to his brother-in-law, receiving therefor $900 less for the premises, and $3,000 less for the stock, good will and fixtures of the business, or a total of $3,900 less than he had paid for them six months before.

"It seems to me that this presents a situation for the application of the well settled rule that where a trustee takes title to trust property in his own name as an individual or in that of some other person, the beneficiary has the option to accept the investment or require the trustee to account for the purchase money with interest. This was $9,000 because credit in that amount was given on the note to the judgment debtor when the defendant purchased the premises and business. True, if he had issued execution, as the agreement contemplated, he might not have been able to obtain that amount, but he did not do so. He chose to embark upon an undertaking of his own, one not authorized in the trust agreement, and so he must suffer the consequences."

Decree affirmed at appellant's costs.